IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT KANSAS CITY

| | |
|---|---|
| ISAAC JIMENEZ, individually and on behalf of others similarly situated,<br><br>  Plaintiff,<br>v.<br><br>THE CITY OF KANSAS CITY, MISSOURI,<br><br>  Defendant. | Case No.<br><br>Div. |

### COLLECTIVE ACTION PETITION

COMES NOW Plaintiff, Isaac Jimenez, by and through his attorneys undersigned, and on behalf of himself and others similarly situated as set forth herein, brings the following Collective Action Petition against Defendant, the City of Kansas City, Missouri (hereinafter "City"), pursuant to Missouri Wage and Hour laws, RSMo. §§ 290.500 *et seq*. and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*.

Defendant City employs firefighters to provide fire suppression, rescue, hazardous material, and emergency medical services. At relevant times, certain firefighters pursued and completed elective certifications which entitled them to a higher, "specialty" rate of pay. In addition, those firefighters worked outside of their earned ranks at a higher rate of pay. The City required these firefighters to work in excess of the work schedule set forth in the *Collective Bargaining Agreement Between City of Kansas City, Missouri and International Association of Fighters, Local 42 2021-2024* (hereinafter the "CBA") without paying wages at a rate of at least one and one-half times the pay rate at which those firefighters were employed. These actions were carried out in violation of Missouri Wage and Hour laws, the FLSA and the CBA. Plaintiff seeks to recover unpaid overtime wages on behalf of himself and all similarly situated firefighters.

## JURISDICTION AND VENUE

1. Missouri Wage and Hour laws and the FLSA authorize court actions by employees to recover damages for violations of wage and hour provisions. This Court has jurisdiction over the unpaid overtime compensation claims brought by the Plaintiff and those similarly situated, as expressly provided in § 290.527, RSMo. and 29 U.S.C. § 216(b)[1].

2. Venue in this Court is appropriate pursuant to § 508.010, RSMo., in that the Plaintiff was first injured due to the unlawful acts of the City in Kansas City, Jackson County, Missouri.

## PARTIES

3. Plaintiff Isaac Jimenez works as a firefighter for the City. The terms and conditions of his employment, including compensation, are determined by the CBA.

4. The Plaintiff brings Count I of this lawsuit as a collective action under Missouri Wage and Hour law and the FLSA on behalf of himself and all other similarly situated firefighters employed by the City since May 1, 2021 to redress the City's willful failure and refusal to pay overtime wages to which the Plaintiff and others similarly situated are entitled.

5. The Plaintiff and others similarly situated (collectively "Plaintiffs" or the "Collective Class") consent to become plaintiffs in this action pursuant to 29 U.S.C. § 216(b), as evidenced by "Consent to Sue" documents. A sample of said document is attached to this Collective Action Petition as Exhibit A.

---

[1] Section 216(b) provides in relevant part, "An action to recover the liability prescribed in [this section] may be maintained against any employer (including a public agency) in any Federal or <u>State court</u> of competent jurisdiction by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C.A. § 216 (emphasis added); *Courtwright v. Bd. of Regents of Cent. Missouri State Univ.*, 91-0846-CV-W-3, 1991 WL 255594, at *1 (W.D. Mo. Nov. 22, 1991) ("The Eighth Circuit previously held that an action instituted in a state court for overtime compensation was not removable to a Federal District Court").

6. Plaintiffs are "employees" as defined by RSMo. § 290.500(3) and 29 U.S.C. § 203(e)(1).

7. The City is a municipal corporation organized under the laws of the State of Missouri with its principal office located at 414 East 12th Street, Kansas City, Missouri 64106 and it can be served with process through its Mayor.

8. The City is an "employer" as defined by RSMo. § 290.500(4) and 29 U.S.C. § 203(d).

## GENERAL ALLEGATIONS

9. The Plaintiffs are employed by the City and that employment relationship is governed by the CBA, which sets forth among other things, provisions concerning wages and overtime.

10. As to regular work schedules, the CBA provides:

The regular work schedule for personnel assigned to 24-hour shifts shall be as follows. Employees shall work a 3-shift system on a fourteen (14) day FLSA work schedule.

CBA at p. 33.

11. As to overtime, the CBA provides in relevant part:

The normal FLSA work period for employees assigned to 24-hour shifts shall be fourteen (14) days. Employees on 24-hour shifts shall receive overtime pay at the rate of time-and-one-half for all hours actually worked in excess of one-hundred and six (106) hours in any fourteen (14) day work period.

*Id*.

12. The CBA further provides an incentive program for employees obtaining various certifications related to fire suppression. Under the program, certified firefighters are guaranteed additional pay of three to ten percent (3-10%) above what his/her salary would otherwise be, to wit:

A. Certification Pay:

1      Members who have an associate degree, in a field reasonably related to the Fire Service, as reasonably determined by Fire Management, shall receive incentive pay of $25.00 per pay period.

2      Members who have a bachelor's degree, or above, in a field reasonably related to the Fire Service, as reasonably determined by Fire Management, shall receive incentive pay of $50.00 per pay period.

3      Members who have a master's degree, in a field reasonably related to the Fire Service, as reasonably determined by Fire Management, shall receive incentive pay of $65.00 per pay period.

4      Members who have a doctoral degree, in a field reasonably related to the Fire Service, as reasonably determined by Fire Management, shall receive incentive pay of $75.00 per pay period.

5      Members who have successfully completed a language proficiency assessment of a foreign language or American Sign Language with a minimum passing score of seventy percent (70%) shall receive incentive pay of $50.00 per pay period. The assessment utilized, or any changes to that assessment, shall be agreed upon through the Labor Management process.

B. Special Duty, Assignment and Certification Pay:

1.      Any member of the Hazardous Materials Team who achieves and maintains the operational level of training and certification shall receive additional pay of three percent (3%) above what his/her salary would otherwise be.

2.      Any member of the Hazardous Materials Team who achieves and maintains the technical level of training and certification shall receive additional pay of five percent (5%) above what his/her salary would otherwise be. In addition, the HAZMAT Training Officer will receive additional pay of ten percent (10%) above what his/her salary would otherwise be.

3.      Any member assigned to the ARFF Division, including certified eligible personnel on Pumper 16, who achieves and maintains the required ARFF training and certification shall receive additional pay of five percent (5%) above what his/her salary would otherwise be, except for the Training Officer, who shall receive additional pay of ten percent (10%) above what his/her salary would otherwise be.

4.      Any member assigned to Pumpers 8, 9, 25, 102 DSOs, and any additional companies who are assigned following the execution of this agreement, that achieve

Electronically Filed - Jackson - Kansas City - October 19, 2022 - 05:17 PM

and maintain the required ARFF training and certification, shall receive additional pay of three percent (3%) above what his/her salary would otherwise be.

5. Any member of personnel assigned to Pumper 16 shall receive additional pay of five percent (5%) above what his/her salary would otherwise be, if he/she has participated in ARFF training. Any member of the Rescue Division shall receive additional pay of five percent (5%) above what his/her salary would otherwise be.

6. Members transferred to the position of Instructor shall receive a ten percent (10%) specialty pay. The positions covered are Instructors within the Professional Development Bureau, Hazmat Division Instructor, ARFF Division Instructor, Rescue Equipment Coordinator, and Fire Equipment Coordinator.

7. Members assigned to the position of Community Paramedic shall receive a ten percent (10%) specialty pay.

8. Qualified members eligible to serve as FTO's will receive ten percent (10%) specialty pay for time spent actually working as a FTO.

9. An EST regularly assigned to maintenance of cardiac monitors, hydraulic cots, and other technical medical equipment shall receive a ten percent (10%) differential incentive pay. The current individual assigned to that position will continue to fill that assignment. A future vacancy will be offered to ESTs by seniority.

10. Credentialed cross trained dual roll members permanently assigned to a cross trained dual rule ALS Company which includes a combined suppression Unit (Pumper, or Rescue) and Squad (ambulance) shall receive three percent (3%) specialty pay.

*Id*. at pp. 67-69.

13. The City violated Missouri Wage and Hour law and the FLSA by failing to pay its firefighters for work performed in excess of 106 hours per 14-day work period, at a rate of at least one and one-half times the regular rate, considering all remuneration such as specialty and certification pay; rather, the City calculated these employees' overtime at a lower, half-time "premium" rate resulting in devaluation of their specialty and certification percentages.

14. On January 10, 2019, IAFF Local 42 members brought a collective class action lawsuit against the City for FLSA violations based in part, on its failure to (a) lawfully include

specialty and certification pay in the members' regular rate as required under the FLSA; and (b) pay overtime at one and one-half times the regular rate. *See Adams v. City of Kansas City, Missouri*, 19-CV-00093 (W.D. Mo. Feb. 8, 2019).

15. On September 29, 2021, in the *Adams* case, Judge Bryan Gaddy granted Plaintiffs' Motion for Partial Summary Judgment holding:

> Because, at a minimum, the City failed to pay the regular rate (i.e., the "one...times the regular rate") for hours worked in excess of 212 hours during a 28-day period, and thus, violated the FLSA, the Court DENIES the City's motion for summary judgment on the issue of whether it violated the FLSA and GRANTS Plaintiffs' motion for partial summary judgment.

*Adams v. City of Kansas City, Missouri*, 19-CV-00093-W-WBG, 2021 WL 4484551, at *8 (W.D. Mo. Sept. 29, 2021), motion to certify appeal denied, 19-CV-00093-W-WBG, 2022 WL 138102 (W.D. Mo. Jan. 14, 2022).

16. Based on Judge Gaddy's September 2021 Summary Judgment Order, the City knew it was required to pay the collective class, comprised exclusively of IAFF Local 42 firefighters, overtime pay at one and one-half times the regular rate (including specialty and certification pay); and thus, its violations of Missouri Wage and Hour law and the FLSA subsequent to Judge Gaddy's Order were knowing and willful.

17. Plaintiffs' damages are limited to the time period commencing at the effective date of the CBA or May 1, 2021.

18. The Plaintiffs are not exempt from the overtime wage provisions of Missouri Wage and Hour law or the FLSA.

19. Plaintiffs are suing the City in part, as an "opt-in" collective action under 29 U.S.C. § 216(b) on behalf of all who file a Consent to Sue form with the Court.

20. Plaintiffs seek relief on a collective basis challenging the City's violations of Missouri Wage and Hour law and the FLSA for failing to pay all overtime hours worked by firefighters in the Collective Class. The number and identity of Collective Class plaintiffs yet to opt in and consent to be party plaintiffs may be determined from City and IAFF Local 42 records. Potential opt-in plaintiffs may be notified of the pendency of this collective action.

## COUNT I

**VIOLATIONS OF MISSOURI WAGE AND HOUR LAW, RSMo. §§ 290.500 *et seq*. AND THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 *et. seq*.**

21. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

22. At all relevant times, Plaintiffs have been entitled to the rights, protections, and benefits provided under Missouri Wage and Hour laws and the FLSA.

23. Missouri Wage and Hour law and the FLSA regulate, among other things, the payment of overtime to employees who are employed pursuant to a collective bargaining agreement.

24. Under § 207(k) of the FLSA, firefighters are not bound to a traditional 40-hour workweek for the calculation of overtime, but instead may extend the relevant work period to 28 days, to wit:

> No public agency shall be deemed to have violated subsection (a) with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if--
>
> (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or

(2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if lower, the number of hours referred to in clause (B) of paragraph (1)) bears to 28 days...

29 U.S.C. § 207(k).

25. Under 29 C.F.R. § 553.230, employees engaged in fire protection may receive overtime compensation for all hours worked in excess of 106 in a 14-day pay period. Under the current CBA, IAFF Local 42 and the City agreed to substitute a 14-day pay period for the 28-day pay period in effect at the time of Judge Gaddy's September 2021 Order.

26. The maximum-hours provision of the FLSA pertaining to firefighters, requires employers to pay any covered employee, "not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(k) (emphasis added).

27. Pursuant to U.S. Department of Labor regulations and Supreme Court precedent, the "regular rate" of pay for FLSA purposes is an "actual fact" that "must be drawn from what happens under the employment contract," rather than from any agreement between the employer and employee. 29 C.F.R. § 778.108. "Once the parties have decided upon the amount of wages and the mode of payment, the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary, 'regular rate' in a wage contract." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945).

28. The FLSA further provides that "the regular rate at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee..." 29 U.S.C. § 207(e) (emphasis added).

29. Under the FLSA, Plaintiffs' regular rate includes specialty or certification pay.

30. Under 29 C.F.R. § 778.115, for any employee working "two or more different types of work for which different non-overtime rates of pay…have been established, his regular rate for that week is the weighted average of such rates."

31. From May 1, 2021 onward, the City violated Missouri Wage and Hour law and the FLSA by failing to pay the Plaintiffs for hours worked in excess of 106 hours in a 14-day work period at a rate of at least one and one-half times the Plaintiffs' regular rate.

32. From May 1, 2021 onward, the City violated Missouri Wage and Hour law and the FLSA by failing to properly calculate Plaintiffs' regular rate and overtime where Plaintiffs worked two or more different types of work for which different non-overtime rates of pay apply.

33. Plaintiffs are entitled to damages equal to the overtime pay calculated at one and one-half times the regular rate from May 1, 2021 onward because the City acted willfully, knowingly, and or with reckless disregard for whether its conduct was prohibited by Missouri Wage and Hour law and the FLSA.

34. Plaintiffs have made multiple demands upon the City over many months for reimbursement of overtime, but the City has repeatedly failed and refused to pay.

35. The City's violations of Missouri Wage and Hour law and the FLSA were knowing and willful.

36. The City has not acted in good faith or with reasonable grounds to believe its actions and omissions were not a violation of Missouri Wage and Hour laws or the FLSA, and as a result, the Plaintiffs are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid overtime pay permitted under Missouri Wage and Hour laws and the FLSA. Alternatively, should the Court determine the City did not act willfully in failing to pay overtime

at the specialty rate, Plaintiffs are entitled to an award of prejudgment interest at the applicable legal rate.

37. Missouri Wage and Hour law and the FLSA contain fee-shifting provisions, directing an award of payment of attorney's fees and costs by a defendant to a successful plaintiff. In addition, the FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Unlike other fee-shifting statutes where the award of attorney's fees and costs is discretionary with the court, an award of attorney's fees to prevailing FLSA plaintiffs is mandatory. *Hensley v. Eckerhart*, 461 U.S. 424 (1983).

38. As a result of the aforementioned unlawful conduct by the City, the Plaintiffs have suffered and continue to suffer damages in an amount not presently ascertainable.

## COUNT II

## TEMPORARY RESTRAINING ORDER

39. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

40. As a direct and proximate result of the City's violations of Missouri Wage and Hour law and the FLSA, Plaintiffs are suffering immediate and imminent probability of paycheck deductions by the City to "correct" purported wage overpayments, to wit:

    (a) On or about February 15, 2022, the City's attorney, Kelly Postlewait-Rivers upheld IAFF Local 42 Grievance 21-21, which arose from an agreement where the City was required to retroactively pay Local 42 members pursuant to wage scales incorporated into the CBA, from the CBA's effective date of May 1, 2021. *See* Award Letter, attached hereto as Exhibit B.

(b)     As part of the 21-21 Grievance Award, the City was required to provide IAFF Local 42 with itemized retroactive pay amounts by March 1, 2022. *See Id*. at p. 3. The City failed to meet its deadline and actually served the itemized amounts on July 1, 2022.

(c)     The 21-21 Grievance Award also required the City to pay and make whole, all affected firefighters within 90 days of the Award, or by May 15, 2022. The City failed to meet its deadline; and as of this date, continues to withhold the firefighters' retroactive pay.

(d)     On July 5, 2022, the City provided IAFF Local 42 President, Dan Heizman spreadsheets showing wage overpayments affecting a subclass of approximately 140 Local 42 members entitled to retroactive pay.

(e)     The City's purported overpayments were based in part on payroll calculations related to holiday and overtime pay.

(f)     On September 2, 2022, IAFF Local 42 informed the City that its method for calculating overtime pay violated FLSA rules in that the City calculated overtime by applying a "premium" of one-half to hours worked in excess of 106 over a 14-day work period, rather than calculating overtime at one and one-half times the regular rate.

(g)     On September 22, 2022, the City informed IAFF Local 42 that it intended to begin wage recoupment and retroactive pay for the firefighters affected by the City's unlawful overtime calculations, including Plaintiff. The next day, the City withdrew its notice of wage recoupment and retroactive pay.

-11-

(h) The City's withdrawal of its notice of wage recoupment and retroactive pay was based on the parties' desire to make Fire Department Financial Officer, Joe Pehlman available to Local 42 for a meeting to explain the City's overtime calculations.

(i) On October 10, 2022, Mr. Pehlman informed Local 42 that he agreed with its position, that the City applied an unlawful method of regular rate calculation, which resulted in firefighter overtime underpayment.

41. The City's wage recoupment and retroactive pay based on an erroneous and unlawful method for calculating firefighters' regular rate present an immediate threat of further injury to the Plaintiffs in that the City alone has the authority and discretion to carry out recoupment at any time.

42. The City's threats communicate to the Plaintiffs that it clearly intends to continue its misapplication of pay methods repudiated by Judge Gaddy in his September 2021 Summary Judgment Order.

43. Plaintiffs have no adequate remedy at law to prevent further loss of wages; and damages are inadequate to repair the harm caused by the City and its refusal to adopt and implement lawful pay methods.

44. A temporary restraining order is necessary to prevent the City from unilaterally executing wage recoupment and retroactive pay based on its unlawful regular rate calculations, thereby further damaging the Plaintiffs.

45. A temporary restraining order is necessary to prevent the City from continuing to utilize the unlawful pay methods referenced herein.

46. If this temporary restraining order is granted, there is likely to be only nominal damage, if any, to the City and any such damage will be inconsiderable and will be adequately indemnified by bond.

## COUNT III

## PRELIMINARY AND PERMANENT INJUNCTION

47. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

48. Plaintiffs' legal remedies are inadequate to protect their rights and to prevent further damage by the City's application of unlawful pay methods; therefore, a preliminary and permanent injunction is necessary.

49. The City's wage recoupment and retroactive pay based on an erroneous and unlawful method for calculating firefighters' regular rate present an immediate threat of further injury to the Plaintiffs in that the City alone has the authority and discretion to carry out recoupment at any time; and therefore, Plaintiffs are irreparably harmed.

50. The balance of harm favors an injunction.

51. The harm to the Plaintiffs from the City's application of unlawful pay methods combined with its authority to recoup pay to which it is not entitled, is lasting and permanent.

52. An injunction will not harm the City, as it would simply prevent wage recoupment and retroactive pay based on unlawful pay methods.

53. Plaintiffs are entitled to preliminary and permanent injunction to restrain the City from damaging the Plaintiffs by violating Missouri Wage and Hour law and the FLSA.

WHEREFORE, Plaintiffs respectfully request judgment in their favor and against the City for its Missouri Wage and Hour law and FLSA violations herein and specifically pray for:

(a) compensatory damages;

(b) liquidated damages;

(c) attorney's fees and costs as provided under Missouri Wage and Hour law and the FLSA;

(d) pre- and post-judgment interest;

(e) a temporary restraining order and preliminary injunction as set forth in Plaintiffs' Memorandum of Law in Support of Petition for Temporary Restraining Order contemporaneously filed herewith;

(f) preliminary and permanent injunction; and

(g) such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

54. Plaintiffs demand a trial by jury.

Respectfully submitted,

BOYD KENTER THOMAS & PARRISH, LLC

*/s/ Raymond E. Salva, Jr.*

---

| Raymond E. Salva, Jr. | Mo. Bar No. 66191 |
| John B. Boyd | Mo. Bar No. 23716 |
| John R. Boyd | Mo. Bar No. 42633 |
| Jason Iezzi | Mo. Bar No. 65329 |

221 W. Lexington Avenue, Suite 200
Independence, Missouri 64051
Telephone: (816) 471-4511
Facsimile: (816) 471-8450
E-mail: rsalva@bktplaw.com
E-mail: jbboyd@bktplaw.com
E-mail: jrboyd@bktplaw.com
E-mail: jiezzi@bktplaw.com
ATTORNEYS FOR PLAINTIFFS



## CONSENT TO SUE

Pursuant to the Fair Labor Standards Act, 29 U.S.C. 216(b) (the "Act"), I hereby give my consent to be a party plaintiff in a collective action lawsuit to be filed in the Circuit Court of Jackson County, Missouri at Independence against the City of Kansas City, Missouri (the "City"), claiming violations of the Act for the City's failure to properly calculate and pay overtime wages; in which plaintiffs will be represented by attorneys for the Boyd Kenter Thomas & Parrish law firm in Independence, Missouri.

_____
Signature

_____
Printed Name



CITY OF FOUNTAINS
HEART OF THE NATION
KANSAS CITY MISSOURI

**Department of Human Resources**

**Division of Labor & Employee Relations**

12th Floor, City Hall
414 East 12th Street
Kansas City, Missouri 64106-2743

Phone (816) 513-1908
Fax: (816) 513-1913
2216-CV24586
EXHIBIT B

Electronically Filed - Jackson - Kansas City - October 19, 2022 - 05:17 PM

---

Konsta Myrick, Business Agent
IAAF, Local 42
6320 Manchester Avenue, #42A
Kansas City, Missouri 64133
Sent via email: kmyrick@iaff42.org

Sent electronically

Re: **4th Step Grievance # 21-21**
**Retroactive pay to effective CBA date**

Mr. Myrick:

The subject grievance hearing was held in accordance with Article XX, Section 1 of the Collective Bargaining Agreement between the City of Kansas City, Missouri and Local No. 42, International Association of Firefighters (*hereinafter* the Union). The hearing was held on January 31, 2022, in the Human Resources Conference Room and virtually at City Hall. Present and representing Fire Management were Fire Chief Donna Lake, Associate City Attorney Alan Holtkamp and Administrative Officer Jean Young. City Controller Eric Clevenger was also present. The Union and PM Zimmerili were represented by Local 42 President Dan Heizman and you, Business Agent Konsta Myrick.

### The Union's Position

An agreement regarding the current Collective Bargaining Agreement between IAFF Local 42 and the City of Kansas City, MO was not reached before 5/1/21. However, once an agreement was reached, the wage scales in Appendix A became effective and were retroactive to 5/1/21. PM Zimmerli began being compensated at the appropriate hourly rate ($33.21) during the pay period beginning 8/1/21. He has not been compensated properly for the pay periods that would include 5/1/21 to 7/31/21.

### The Union's Written Position

Appendix A of the CBA states" Monthly wage scales for members of the Bargaining Unit will be those set forth in this Appendix. The City and Union agree that the pay scales for bargaining unit members will be changed in accordance with this Appendix on May 1, 2021." Therefore, the grievant should be compensated properly for all periods he was employed between 5/1/21 and 7/31/21. Instead, he was compensated at $25.30 per hour during the aforementioned period.

### Requested Remedy

If the grievance is sustained, the member is requesting the following remedy: That the union, grievant, and all similarly situated members be made whole in every regard including but not limited to the following:

1. The grievant and all others similarly affected receive corrected retroactive pay to 5/1/21, including any holiday pay, overtime worked (including holdover), interest, etc.
2. That the City take any and all additional measures in this matter deemed just and appropriate

Electronically Filed - Jackson - Kansas City - October 19, 2022 - 05:17 PM

## Summary of Information Presented During the Hearing

During the hearing, the Union stated that:

The City and Union agreed that the pay scales in the CBA, which took effective May 1, 2021, would be used in to compensate PM Zimmerli and those similarly situated to him and that those pay scale would be retroactive to May 1, 2021 (see Union exhibit 1 Appendix A of current CBA). The only pay scales that were changed in this CBA were the pay scales for paramedics and fire medics. (See Union exhibit 2 Paramedic pay scales). Union members, like PM Zimmerli have not been compensated back pay for the change to the pay scales from May 1, 2021 to August 1, 2021. The Union has made several attempts to get this corrected but City has not corrected the issue. In addition to back pay the Union also identified an issue with retroactive specialty pay. The Union states that specialty pay from May 2021 to December 2021 has not be paid and that Union has identified that issue to City and City has failed to remedy the issue.

In response, Management presented the following:

Management agrees that retroactive pay for increases from May 1, 2021 to August 1, 2021 for PM Zimmerli and those similarly situated have not be issued. Management further acknowledged that retroactive specialty pay has not been paid either. Eric Clevenger cited an inability to calculate who needed such pay because Fire Management had not provided the required spreadsheet. Eric Clevenger indicated that calculations for retroactive pay for both issues were laborious, as they required individual manual calculations for each employee. Eric Clevenger further stated that once he receives the appropriate spreadsheets from Fire Management that it would take an estimated two to three months for all parties impacted to be made whole.

## Summary of Findings

This grievance alleges that certain members of Local 42 are entitled to receive retroactive pay in accordance with the current CBA and appropriate appendixes, specifically retroactive pay from May 1, 2021 to August 1, 2021 and retroactive specialty pay from May 2021 to December 2021.

After reviewing the evidence and listening to the testimony at the grievance hearing there does not appear to by any facts at issue. The sole controversy is why it is taking so long for retroactive pay to calculated and paid out. Management offered several explanations for the delay.

During the hearing all parties present agreed to the following steps:
1. Mary Maddox and/or Joe Pehlman will provide 2 spreadsheets to Jean Young and Dan Heizman: 1) all employees who are entitled to retroactive pay due to pay scale modifications from May1, 2021 to August 1, 2021 and 2) all employees entitled to retroactive pay for specialty pay from May 2021 to December 2021.
2. Jean Young and Dan Heizman will review the spreadsheets for accuracy.
3. Upon mutual agreement by Jean Young and Dan Heizman the spreadsheets will be provided to Eric Clevenger; and
4. Once provide the spreadsheets agreed upon by Jean Young and Dan Heizman, Eric Clevenger and/or other Finance Department staff will calculate and pay out retroactive pay at issue in the grievance.

In furtherance of the requested remedy the following deadlines are applicable to the above tasks:
1. Mary Maddox and/or Joe Pehlman must provide the above mentioned spreadsheets to Jean Young and Dan Heizman for review by **March 1, 2022**.
2. Eric Clevenger and/or Finance Department staff must complete all calculations for employees impacted by the two retroactive pay concerns at issue is this grievance and employees should be

    paid and made **whole within 90 days** of receiving the above mentioned spreadsheets from Jean Young and Dan Heizman.

3. Reasonable notice to the Union, specifically Dan Heizman, will be given before retroactive payments are made and adjustment sheets for those employees will be provided.

Based on the information above, the grievance is upheld. During the hearing, all parties identified their responsibilities in the process and agreed to a course of action to resolve the grievance. Regarding the Union's remedy request for interest, the union did not provide a basis for the request; therefore, it is denied.

Sincerely,

/s/ *Kelly Postlewait-Rivers*

Kelly Postlewait-Rivers
Manager, Labor & Employee Relations
Human Resources Department

C:    Bryan Platt, City Manager
       Teri Casey, Director, Human Resources Department
       Donna Lake, Fire Chief, Fire Department
       Dan Heizman, President, Local 42
       Tammy Queen, Director, Finance Department
       Eric Clevenger, City Controller, Finance Department
       Local 42 Grievance File (#21-21)